IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–01003–EWN–MJW


N-ZYMECEUTICALS, INC., and
DR. RALPH HOLSWORTH, M.D.,

        Plaintiffs,

v.

DALE KRIZ, and
MOMENTUM HEALTH PRODUCTS, LLC,

        Defendants.

---

## ORDER TRANSFERRING CASE

---

This matter is before the court on defendants' motion to dismiss or change venue (#4),

plaintiffs' response, and defendants' reply.  The facts are gleaned from the pleadings and

affidavits.  When deciding a motion to dismiss for lack of jurisdiction on the basis of affidavits

and other written material, plaintiff need make only a *prima facie* showing. *Ten Mile Industrial*

*Park v. Western Plains Service Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987); *Behagen v.*

*Amateur Basketball Association*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010,

105 S. Ct. 1879 (1985).  The allegations in the complaint must be accepted as true if un-

controverted by defendant's affidavits.  *Id*.  When the parties present conflicting affidavits, as

they have here, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's *prima*

*facie* showing is sufficient notwithstanding the contrary presentation by the moving party.  *Id*.

Thus, the procedural posture of the case requires that the court view the facts, and *all reasonable inferences* to be drawn from those facts, in a light most favorable to plaintiff.

*Facts*

Plaintiff Ralph Holsworth moved to Colorado from Ruidoso, New Mexico, in November of 2003. In March of 2002, while Holsworth was living in New Mexico, he and his wife incorporated Plaintiff N-ZymeCeuticals, Inc., under the laws of Colorado. N-Zyme's business involves the sales and distribution of certain types of health products. Defendant Dale Kriz has resided in Phoeniz, Arizona since 1977. He is the manager of Defendant Momentum Health Products, LLC, a Nevada limited liability company with its principal place of business in Phoenix.

In 2003, Kriz was searching for new products on behalf of a Phoenix veterinarian and a Phoenix cancer clinic. He was referred to Holsworth and contacted Holsworth, who was then in New Mexico, by telephone. Holsworth got Kriz's e-mail address and thereafter sent Kriz more information about the products which they had discussed.

These initial contacts were followed by additional telephone conversations and e-mail exchanges between Kriz, in Arizona, and Holsworth, in New Mexico. The parties' attention eventually focused primarily on two products, vitamin K2 and a product used primarily in treating pet allergies and cardiovascular disease in humans (hereinafter called "the pet allergy/cardiovascular product," for short). N-Zyme had exclusive distribution rights for the pet allergy/cardiovascular product in North and South America for 2004 and 2005. It is not clear whether it had similar rights for the vitamin K2 product, although, according to Kriz, Holsworth claimed that it did.

-2-

At some point during the telephone and e-mail contacts, Kriz and Holsworth began discussing some sort of joint business arrangement between their two companies. The general idea was that Holsworth and N-Zyme would contribute the products to which they had distribution rights and, according to Holsworth, scientific and health industry expertise. Holsworth and N-Zyme, however, evidently wanted an entity which could develop and produce FDA-approved products that used vitamin K2 and/or the pet allergy/cardiovascular product. Kriz located such a company, Western Research Laboratories, in Phoenix. The parties apparently discussed an arrangement under which they, together with Western Research, would form a company called Alliance Labs, to be located in Arizona, for the purpose of developing, marketing, and distributing products incorporating vitamin K12 and the pet allergy/cardiovascular product. The parties apparently dispute the terms of the proposed arrangement, although it appears that Western Research was to contribute money for the joint arrangement, while Kriz and Momentum apparently had client contacts who would be wholesale customers for the products produced by the joint enterprise.

After Holsworth moved from Ruidoso, New Mexico, to Pagosa Springs, Colorado in November of 2003 (apparently in connection with new employment), the telephone contacts and e-mail exchanges continued. Holsworth says that they sometimes occurred on a daily basis and that there were "literally hundreds of emails and telephone calls" during the parties' discussions of their joint arrangement. Defendants do not appear to dispute the volume of e-mails and telephone calls.

On or about August 28, 2004, , the parties opened a joint bank account at the Wells Fargo Bank in Pagosa Springs. This account has developed into an important aspect of the parties'

dispute concerning personal jurisdiction. It appears that Holsworth formed a limited liability company to carry on some of the parties' business. The relation between this limited liability company and the Alliance Labs venture, if any, is unclear. In any event, although Kriz thought he was supposed to have opened a bank account at a Wells Fargo branch in Phoenix for the limited liability company, Holsworth opened the account in Pagosa Springs and sent Kriz the signature card and other materials incident to opening of the account. Kriz never objected to the opening of the account and completed the account-opening documents. Even though the parties' joint business arrangement was ultimately never consummated, Kriz deposited into the account some customer payments for the sale of N-Zyme's products.

As negotiations continued, the parties exchanged drafts of a Supply Agreement, a License Agreement, and an Operating Agreement to be used in establishing the parties' joint arrangement. It is not clear who drafted these agreements, where the agreements were to be performed, or what their specific terms were. As these agreements were in process, Kriz sent Holsworth the proposed Non-Circumvention Agreement which is the subject of one claim in this litigation. Although the scope of this agreement is hotly disputed, the general idea of the agreement was to preclude plaintiffs from dealing directly with individuals or entities first introduced to plaintiffs by Kriz. Kriz drafted the agreement in Arizona and sent it to Holsworth in Colorado. Holsworth made some modifications, signed the agreement, and returned it to Kriz, who signed it in Arizona.

Kriz acknowledges having visited Colorado, more than nine years ago, for the purpose of selling lighting fixtures for a company which has no relation to the parties' business and with which he is no longer affiliated. Plaintiffs make nothing of this contact in their response, and,

-4-

since the visit seems insignificant, the court will not further consider it.  Kriz denies any other

visits to Colorado.  Kriz does acknowledge contacting two Colorado companies (by telephone

from Arizona) and arranging for them to provide samples and labels to N-Zyme and the limited

liability company which was formed to carry on the parties' proposed joint business.

Holsworth swears that there was similar contact with a third Colorado resident named Amy

Mitchell.

　　　While the parties were dickering over the proposed joint venture, Kriz was purchasing N-

Zyme products, ordering them directly from N-Zyme in Colorado and paying by check.

According to Holsworth, Defendant Momentum Health also purchased products from N-Zyme.

At least some of these products were re-sold to Momentum's own customers, using

Momentum's own labels.

### *Discussion*

#### *1.Does the Court Have Personal Jurisdiction?*

　　　Colorado distinguishes between cases in which jurisdiction is sought based on a single

isolated incident and cases in which jurisdiction is predicated on allegations of continuous,

substantial conduct in the forum state.  *Behagen v. Amateur Basketball Association*, 744 F.2d

731, 734 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010, 105 S. Ct. 1879 (1985).  If a defendant

has substantial and continuous business contacts with the forum state, it will be subject to the

state's jurisdiction for all causes of action.  *Perkins v. Benguet Consolidated Mining Co.*, 342

U.S. 437, 447-49, 72 S. Ct. 413, 419-20 (1952); *Ruggieri v. General Well Service, Inc.*, 535 F.

Supp. 525, 533 (D. Colo. 1982).  Plaintiff does not appear to claim that the court has general

jurisdiction over either defendant.

In contrast, jurisdiction over a non-resident defendant may be predicated on a single act or minimum contacts if: (1) the defendant purposefully avails itself of the privilege of acting in Colorado or of causing important consequences in the state; (2) the cause of action arises from the consequences of the defendant's in-state activity; and (3) defendant's activities, or the consequences thereof, have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Van Schaack & Co. v. District Court, Eighteenth Judicial District*, 189 Colo. 145, 147, 538 P.2d 425, 426 (1975) (quoting *White Lumber Sales, Inc. v. Sulmonetti*, 252 Or. 121, 448 P.2d 571, 574 [1968]). *See also Ruggieri*, 535 F. Supp. at 531. The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124 (2005), provides in relevant part:

> Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person and, if a natural person, his personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from:
>
> (a) The transaction of any business within this state. . .

The Colorado long-arm statute permits this court to exert jurisdiction over non-residents to the fullest extent permitted under the limits of constitutional due process. *Ruggieri v. General Well Serv., Inc.*, 535 F. Supp. 525, 531 (D. Colo. 1982); *Marquest Medical Prods. Inc. v. EMDE Corp.*, 496 F. Supp. 1242, 1247 (D. Colo. 1980). Therefore, the applicable analysis is whether the defendant has minimum contacts with the forum state so as not to offend "traditional notions of fair play and substantial justice." *Cleverock Energy Corp. v. Trepel*, 609 F.2d 1358 (10th Cir. 1979) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 [1945]), *cert. denied*,

446 U.S. 909, 100 S. Ct. 1836 (1980).  A showing that defendants transacted business in this state would establish the required minimum contacts.

Determining minimum contacts entails a factual inquiry.  In order to satisfy its burden of establishing jurisdictional facts that support a finding of minimum contacts with the forum state, a plaintiff seeking to invoke section 13-1-124 "must allege in the complaint sufficient facts to support a reasonable inference that defendants engaged in conduct described in the statute which subjects them to *in personam* jurisdiction." *Pioneer Astro Indus., Inc. v. District Court*, 566 P.2d 1067, 1068 (Colo. 1977) (en banc) (quoting *Texair Flyers Inc. v. District Court*, 506 P.2d 367, 369 [Colo. 1973] [en banc]).  "In ascertaining the facts necessary to establish jurisdiction, the district court must accept as true the allegations set forth in the complaint to the extent that they are uncontroverted by defendant's affidavits." *Ten Mile*, 810 F.2d at 1524.  Jurisdictional facts may also be established by affidavit or by presenting evidence at a hearing on the issue of jurisdiction. *Panos*, 662 P.2d at 182.  A court reviewing jurisdictional claims may go beyond the face of the pleadings and examine documents and affidavits to resolve any factual disputes.  2A *Moore's Federal Practice* ¶ 12.07 (1992).  The type of factors to be considered include: "regular and systematic activity, continuity of contacts, promotion and utilization of channels of interstate commerce, benefits and protections afforded by the state, casualness of presence and an estimate of inconveniences." *People ex rel. Jeffers v. Gibson*, 508 P.2d 374, 376 (Colo. 1973).

Personal jurisdiction comports with the Due Process Clause if defendant has sufficient minimum contacts with the forum state such that "the maintenance of the action there does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S. Ct. at 158; *Kulko v. Superior Court*, 436 U.S. 84, 96–97, 98 S. Ct. 1690, 1699 (1978).

*See also Rambo v. American S. Ins. Co.*, 839 F.2d 1415 (10th Cir. 1988) (comprehensive

discussion of due process requirements).  In determining whether there are minimum contacts, the

court must consider the relationship among "the defendant, the forum, and the litigation." *Shaffer*

*v. Heitner*, 433 U.S. 186, 204, 97 S. Ct. 2569, 2580 (1977).

The issue of whether the court has personal jurisdiction is a close one here.  The court is

not persuaded that Kriz's participation in opening, and his subsequent use of, the Wells Fargo

bank account has any significance.  Wells Fargo is a multi-state operation with branches in

Colorado and Arizona, and it is a fair inference that Kriz used the account through a branch in

Arizona.  Returning the signature card to Holsworth in Colorado so that Holsworth could open

the account, which could be accessed in either Colorado or Arizona, hardly demonstrates

purposeful action directed toward Colorado.  Similarly, Kriz's two or three telephonic contacts

with Colorado residents are inconclusive here, since he was evidently discussing samples and

labels which the Colorado residents were supplying to N-Zyme in Colorado.  Plaintiffs cannot

now twist these oblique contacts into a claim that defendants have subjected themselves to a

lawsuit by Holsworth and N-Zyme.

The transactions pursuant to which N-Zyme shipped its products to defendants, in

Arizona, are a different matter.  It appears to be plaintiffs' contention, in their unjust enrichment

claim, that defendants either did not pay for the product and/or that defendants were under some

sort of fiduciary duty to label the products properly and account to the nascent joint venture for

profits on the products.  Although the numbers or dollar volume of the transactions are not

apparent from the record, it is a fair inference that the transactions were not singular or isolated.

It is consistent with the long-arm statute and Due Process to hold that one who systematically

places interstate telephone orders for goods, procures shipment of those goods from another state, and thereafter fails to pay for the goods has caused important consequences to the seller in the other state and may reasonably expect to be haled into court in the seller's state.

### 2. *Should the Case Be Transferred to Arizona*?

Defendant requests, in the alternative, that the case be transferred to the District of Arizona, pursuant to 28 U.S.C.A. § 1404(a) (West 2005).  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court where it might have been brought."  Although similar to the doctrine of *forum non conveniens*, section 1404(a) gives the transferor court greater discretion than that doctrine, particularly since transfer, not dismissal, is the relief granted.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, 102 S. Ct. 252, 264 (1981); *Norwood v. Kirkpatrick*, 349 U.S. 29, 34, 75 S. Ct. 544, 549 (1955).  *See Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991) (section 1404[a] grants broader discretion than was available under *forum non conveniens* and permits transfer upon lesser showing); *Headrick v. Atchison, T. & S.F. Ry.*, 182 F.2d 305, 309 (10th Cir. 1950) (same).  When deciding whether to transfer a case pursuant to section 1404(a), the court nevertheless considers factors derived from the doctrine of *forum non conveniens*.  *See Frontier Airlines, Inc. Retirement Plan for Pilots v. Security Pacific Nat'l Bank, N.A.*, 696 F. Supp. 1403, 1406 (D. Colo. 1988); *Hardaway Constructors, Inc. v. Conesco Indus., Ltd.*, 583 F. Supp. 617, 619 (D.N.J. 1983).

The Tenth Circuit has adopted a number of factors which a district court should consider when performing an analysis under the doctrine of *forum non conveniens*:

> [T]he plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967). This list is based upon the Supreme Court's decision in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 842 (1947) (setting forth factors to be considered in a *forum non conveniens* analysis).

The party bringing the motion to transfer bears the burden of establishing the inconvenience of the existing forum. *Chrysler*, 928 F.2d at 1515; *Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir. 1978); *William A. Smith Contracting Co., Inc. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972). Although a lesser showing is required under section 1404(a) than under *forum non conveniens*, the moving party must still make a strong showing of inconvenience. *See Gulf Oil*, 330 U.S. at 505, 67 S. Ct. at 843 ("unless balance is strongly in favor of defendant, plaintiff's choice of forum should rarely be disturbed"); *Ritter*, 371 F.2d at 147 ("unless evidence and circumstances are strongly in favor of transfer, plaintiff's choice of forum should not be disturbed"); *Headrick*, 182 F.2d at 310 (case will not be transferred unless defendant "demonstrates by clear and convincing evidence that balance of factors tips in defendant's favor").

Defendant's showing of inconvenience must be sufficiently strong to overcome plaintiff's initial choice of forum. When assessing a section 1404(a) motion, plaintiffs' choice of forum should not be dismissed lightly, but "must be accorded great weight." *Sackett v. Denver and Rio*

*Grande W. R.R.*, 603 F. Supp. 260, 261 (D. Colo. 1985) (citing *Boyd v. Grand Trunk W. R.R.*,

338 U.S. 263, 265, 70 S. Ct. 26, 27 [1949] [dicta] ["The right to select a forum granted in § 6 is a

substantial right"]). *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3rd Cir. 1970) (plaintiff's

choice of forum is usually entitled to paramount consideration and should not be lightly

disturbed), *cert. denied*, 401 U.S. 910, 91 S. Ct. 871 (1971); *Alameda Nat'l Bank v.*

*Kanchanapoom*, 752 F. Supp. 367, 370 (D. Colo. 1990) ("plaintiff's choice of forum is entitled

to great weight") (citing *Kingston v. Brussat*, 698 F. Supp. 215, 216 [D. Colo. 1988]).

Here, the court is satisfied that nearly all witnesses in this case, except Plaintiff

Holsworth and his wife, reside in Arizona and would be likely be subject to a subpoena there.

According to Kriz, the Non-Circumvention Agreement specifies that it is to be interpreted under

Arizona law, and plaintiffs make no contrary contention. The court is unpersuaded by plaintiffs'

attempts to characterize the issues in the case as largely legal and to suggest that the only

witnesses will be the parties themselves. As to the claim seeking to void the Non-Circumvention

Agreement, it appears to the court that there is a dispute concerning whether the agreement is

limited to a single entity (as plaintiffs contend) or whether there were other entities in Arizona

who were introduced to plaintiffs by Kriz. Certainly, these other entities would be witnesses to

such a claim. The witnesses to any breach of the agreement would also appear to be in Arizona.

As to the unjust enrichment claim, it would appear that some of the customers to who the

product was re-sold in Arizona might also be witnesses.

## *Conclusion*

For the reasons recited herein, it is

**ORDERED** as follows:

-11-

1.  The motion to dismiss or transfer (##4, 5)* is GRANTED in part and DENIED in part.  The motion to dismiss for want of personal jurisdiction is DENIED.  The motion to transfer is GRANTED.

2.  The case is hereby transferred to the United States District Court for the District of Arizona.

Dated this  16th  day of August, 2005.

BY THE COURT:


s/Edward W. Nottingham
EDWARD W.  NOTTINGHAM
United States District Judge

_____

*It appears to the court that defendants electronically filed the same motion twice, once as docket #4 and once as docket #5.  If the court has overlooked differences which defendants regard as significant, they may bring it to the court's attention and request whatever relief they regard as appropriate.

-12-